# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| STEPHEN C. LILLY,<br><br>    Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | No. 19-CV-4065-CJW-MAR<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This matter is before the Court on a Report & Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge. (Doc. 16). Judge Roberts recommends that the Court affirm the decision of the Commissioner of Social Security ("the Commissioner") denying plaintiff Stephen C. Lilly's ("claimant") application for disability insurance benefits ("DIB") under Title II of the Social Security Act. (*Id.*, at 1). On March 2, 2021, claimant filed objections to the R&R (Doc. 17), and defendant filed a response to claimant's objections on March 5, 2021 (Doc. 18).

For the following reasons, the Court **overrules** claimant's objections (Doc. 17), **adopts** Judge Roberts' R&R without modification (Doc. 16), and **affirms** the Commissioner's decision.

## II. RELEVANT BACKGROUND

On November 2, 2017, claimant applied for DIB alleging disability since June 1, 2002, due to Post Traumatic Stress Disorder ("PTSD") and migraines. (AR 10, 142, 170).[1] Claimant had earning records showing he had "sufficient quarters of coverage to

---

[1] "AR" refers to the administrative record. (Doc. 8).

remain insured through December 31, 2007," known as the last date insured, meaning that claimant had to "establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (AR 10). The Commissioner denied claimant's application at all levels of administrative review. (AR 74–78, 80–83). On November 1, 2018, Administrative Law Judge ("ALJ") William L. Hogan held a hearing on claimant's case. (AR 34–58). On January 16, 2019, the ALJ found claimant was not disabled. (AR 10–22). On July 31, 2019, the Appeals Council denied further review. (AR 1–5).

On October 2, 2019, claimant timely filed a complaint in this Court. (Doc. 3). By April 27, 2020, the parties had fully briefed the case and the Court deemed the case ready for decision. (Docs. 11, 12, 13, & 14). On that same day, the Court referred this case to Judge Roberts for an R&R.

### III. THE REPORT AND RECOMMENDATION

On February 23, 2021, Judge Roberts issued an R&R recommending that the Court affirm the Commissioner's decision. (Doc. 16). In his R&R, Judge Roberts addressed the two assertions of error claimant raised in his briefing: (1) the ALJ failed to fully develop the record about claimant's migraines; and (2) claimant's Appointments Clause challenge to the ALJ's authority. (*Id.*). As to the first argument, claimant argued that treatment records from his neurologist, Dr. Lynn M. Rankin, supported a finding of disability, but if there were doubts based on her rendering an opinion about his condition ten years after claimant's last date insured, then the ALJ should have contacted Dr. Rankin for clarification. (Doc. 11, at 3–9).

First, Judge Roberts thoroughly recounted claimant's treatment history, with a particular focus on treatment provided and records and reports generated by Dr. Rankin. (Doc. 16, at 7–10). Judge Roberts also summarized the relevant testimony and opinion evidence, again with particular focus on Dr. Rankin's opinions. (*Id.*, at 10–12).

2

Judge Roberts then carefully analyzed each of claimant's arguments. As for claimant's argument that "[t]here is reason to believe Dr. Rankin's post-dated opinion could also apply to the relevant time period," (Doc. 11, at 8), Judge Roberts found that it did not justify remand (Doc. 16, at 15). Judge Roberts found that it was clear that Dr. Rankin's opinion was based on claimant's condition in 2018, not earlier. (*Id.*, at 15–16). Further, Judge Roberts found that even if Dr. Rankin's opinion applied to the relevant time period, it would not have changed the ALJ's opinion because the ALJ was not bound to accept the opinion. (*Id.*). Judge Roberts summarized the medical records upon which the ALJ based his decision, noting, among other things, that Dr. Rankin cited no treatment notes to support her opinion. (*Id.*, at 16). Judge Roberts also recognized that Dr. Rankin's notes did not support her opinion in any event with the exception of one entry in which she found claimant has "some phonophobia." (*Id.*).[2]

Judge Roberts addressed claimant's assertion that an April 3, 2006, treatment note written by Dr. Debra Benjamin, claimant's former neurologist, stated that claimant had intractable headaches. (*Id.*, at 18). Judge Roberts found this note to be an outlier and unsupported by any other treatment records by Dr. Benjamin or anyone else. (*Id.*). Indeed, Judge Roberts pointed out that this note is inconsistent with Dr. Benjamin's other treatment notes. (*Id.*, at 18–19).

Judge Roberts also reviewed the ALJ's consideration of claimant's daily activities and found there was evidence in the record to support the ALJ's conclusion that claimant's migraines were not as debilitating as he claimed. (*Id.*, at 20–21). The ALJ had found that claimant had engaged in a significant number of daily chores, including caring for his children full time, exercising, and hunting, all of which the ALJ found

---

[2] Judge Roberts also pointed out that claimant misread this treatment note to claim that Dr. Rankin found that claimant suffered from both phonophobia and photophobia. (*Id.*, at 19–20). The treatment note clearly only references phonophobia.

3

showed that claimant's migraines were not debilitating. (*Id.*, at 20). The ALJ also noted that claimant worked for many years at a full time job even though he suffered from migraines, and after that employment ended he accepted unemployment benefits for a period of time during which he swore he was ready and able to work. (*Id.*, at 20–21). In addition, Judge Roberts found the ALJ properly relied on the Veterans Administration records from the relevant time period which showed claimant was deemed able to work. (*Id.*, at 21–22).

In short, Judge Roberts found that although claimant's "migraines certainly were not eliminated during the relevant time period and they worsened near the end of the period [and] the evidence on the record as a whole . . . is inconsistent with Claimant's claim of disabling migraines." (*Id.*, at 22). Judge Roberts also found that "[t]he record was not ambiguous or inadequate to allow for proper evaluation of Claimant's complaint." (*Id.*, at 23). Thus, Judge Roberts found remand not required. (*Id.*).

Last, Judge Roberts found that claimant's Appointments Clause challenge was foreclosed by the Eighth Circuit Court of Appeals' ruling in *Davis v. Saul*, 963 F.3d 790 (8th Cir. 2020) (*Id.*, at 29–30).

## IV.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Court must affirm the Commissioner's decision "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions," thus embodying "a zone of choice

4

within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

Under this standard, the court considers "all of the evidence that was before the [ALJ], but [it does] not re-weigh the evidence[.]" *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citation omitted).

To evaluate the evidence in an appeal of a denial of benefits, a court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). A court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citation omitted), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (citation omitted). This is true even if the court "might have weighed the evidence differently[.]" *Culbertson*, 30 F.3d at 939. The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

## B. Review of Report and Recommendation

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

A court reviews any portions of an R&R to which a party has made no objections under at least a clearly erroneous standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error."). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

## V. CLAIMANT'S OBJECTIONS TO THE R&R

Claimant objects to Judge Roberts' R&R in three respects. (Doc. 17).[3] First, claimant argues that Judge Roberts erred by giving him seven instead of 14 days to object to the R&R. (*Id.*, at 1–2). Second, claimant argues that Judge Roberts erred by failing to find that remand was appropriate so the ALJ could further develop the record with Dr. Rankin. (*Id.*, at 2–6). Last, claimant argues that Judge Roberts erred by rejecting his Appointments Clause argument. (*Id.*, at 6–7).

As for claimant's objection to the time for objecting to the R&R, claimant noted that his argument is moot because he responded within the seven days. (*Id.*, at 2). Had claimant asked for more time, the Court would have granted it. Further, the Court has waited until after expiration of the 14-day time period to rule on the R&R in case claimant wished to file a supplemental brief. He has not done so. Thus, the Court will not further address this issue.

As to claimant's Appointments Clause argument, he has only reiterated the argument he made to Judge Roberts and has failed to articulate how Judge Roberts erred in applying binding circuit precedent. Thus, the Court reviews claimant's argument for clear error and finds none. Therefore, the Court will conduct a de novo review only of claimant's argument that the ALJ erred by failing to develop the record.

## VI. ANALYSIS

Claimant asserts that the ALJ should have further developed the record on whether Dr. Rankin's opinions could relate back to the relevant time period. (Doc. 17, at 2–6). Claimant argues that Judge Roberts and the ALJ both erred by not recognizing that "there is a potential that Dr. Rankin, who had treated [claimant's] headaches since before the

---

[3] Notably, claimant does not allege that Judge Roberts erred in ruling on claimant's undeveloped Step Three argument. (Doc. 16, at 24–29). Having conducted a review of the record as a whole, the Court finds that Judge Roberts was not clearly erroneous in his decision on this issue.

7

date last insured, could explain that the important outcome determinative absences limitation, with (sic) fits with Dr. Rankin's pre-[date last insured] notes, related back." (*Id.*, at 5). Claimant also implies that the ALJ gave too much weight to the effect of Botox injections in treating claimant's migraines. (*Id.*, at 5–6). Last, claimant argues that Judge Roberts applied an improper harmless error analysis, reasoning that "Dr. Rankin's opinions are probably disabling" and, if so, then the vocational expert would have to find claimant unemployable. (*Id.*, at 6).

Because claimant's last date insured was December 31, 2007, he has the burden of showing he had a disabling impairment before his insured status expired for disability insurance benefits. *See Barnett v. Shalala*, No. 92-3433, 1993 WL 212453, at *1 (8th Cir. June 16, 1993) (citing *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984)). "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider [the claimant's] medical condition as of the date [the claimant] was last insured." *Davidson v. Astrue*, 501 F.3d 987, 989 (8th Cir. 2007). "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). But, the evidence from outside the period cannot serve as the only support for the disability claim. *Id.*

Here, claimant pins his claim on evidence almost entirely from outside the covered period. Dr. Rankin saw claimant only shortly before the covered period ended. Claimant relies entirely on her 2018 opinion about his then-current status, an opinion rendered a decade after the end of the covered period. Her opinion was clearly worded to reflect claimant's then-current status and offered no assessment at all about his condition during the covered period. The Court also agrees with the ALJ's conclusion that evidence from the period she did treat claimant did not relate back to the covered time period and was

8

inconsistent with the idea that during the covered time period he would be unable to work full time.

Claimant's reliance on two pages from the record fails to prove he would not have been able to work. Claimant cites an October 18, 2007, treatment note which indicates that his migraines "which required rest are occurring about once a week" (AR 289) which he believes is consistent with Dr. Rankin's opinion that claimant would like to be absent from work "more than four days per month" (AR 807). (Doc. 17, at 4–5). The Court agrees with Judge Roberts, however, that migraines requiring rest once a week does not mean that claimant would be unable to work four times or more a month because the treatment note did not indicate how long the rest was needed and certainly did not indicate he needed to rest the entire day. (Doc. 17, at 16). Further, the increase in migraines occurred toward the very end of the covered time period and do not reflect claimant's condition throughout the whole time period. Notably, they showed some signs of effective treatment through Botox injection. (AR 284–85). Although the Court recognizes that Botox injections may not provide full relief and can only be administered "every so often" (Doc. 17, at 5), that treatment certainly would mitigate the migraines that required claimant to rest for some period of time four times or more a month.

In the end, claimant only argues that "there is a potential that Dr. Rankin . . . could explain that . . . [her] absences limitation . . . related back." (*Id.*, at 5). That falls woefully short of a claimant's burden of producing evidence proving claimant's disability. It is, in short, conjecture that if the Court remanded and ordered the ALJ to further inquire of Dr. Rankin that she might be able to provide an explanation that would support claimant's assertion that he was in need of an absences limitation. Speculation cannot substitute for evidence.

The Court also finds that Judge Roberts did not engage in improper harmless error analysis. An error is harmless when the claimant fails to "provide some indication that

9

the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Claimant has pointed to nothing in the record indicating the ALJ would have decided the issue differently if he would have had Dr. Rankin clarify whether her opinion related back to the covered time period. Indeed, the ALJ pointed out how treatment records from, and claimant's daily activities during, the covered time period were inconsistent with that opinion. Thus, the record shows the ALJ would have justifiably discounted the weight he would give to Dr. Rankin's opinion, even if she rendered one in the manner claimant speculates. Claimant's reliance on *Lucas v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020) is misplaced. (*Id.*, at 6). In *Lucas*, the ALJ committed a legal error that directly impacted the weight given to a treatment provider's opinion. We have no legal error here.

Thus, the Court **overrules** claimant's objection as to Judge Roberts' analysis of whether the ALJ erred by failing to fully and fairly develop the record.

## VII. CONCLUSION

For these reasons, the Court **overrules** claimant's objections to Judge Roberts' R&R (Doc. 17), **adopts** the R&R without modification (Doc. 16), and **affirms** the Commissioner's decision that claimant was not disabled during the covered period. Judgment will enter against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 10th day of March, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa